# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATHAN SILVA, Derivatively on Behalf of Nominal Defendant ATLASSIAN CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| MICHAEL CANNON-BROOKES, SCOTT FARQUHAR, SHONA BROWN, HEATHER M. FERNANDEZ, SASAN GOODARZI, JAY PARICKH, ENRIQUE SALEM, STEVEN SORDELLO, RICHARD P. WONG, MICHELLE ZATLYN, ANU BHARADWAJ, and CAMERON DEATSCH, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| ATLASSIAN CORPORATION, | ) ) | |
| Nominal Defendant. | ) | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Nathan Silva ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant Atlassian Corporation ("Atlassian" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' (defined below) breaches of fiduciary duties and violations of federal law.  Plaintiff alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, conference call transcripts and announcements made by Defendants, United States Securities and Exchange Commission

1

("SEC") filings, press releases published by and regarding Atlassian, legal filings, news reports, securities analysts' reports about the Company, and other publicly available information.

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought on behalf of Atlassian against certain officers and members of the Company's Board (collectively, the "Individual Defendants") (defined further, *infra*) for breaches of their fiduciary duties as set forth below.

2.     Atlassian designs, develops, licenses, and maintains collaboration and project-management software.  The Company generates revenue primarily from license subscriptions both from free users who convert to paying customers when they exceed the cap on free licenses, and from existing paying users who expand their existing subscriptions.

3.     In lieu of a direct sales force, the Company instead primarily utilizes a "viral marketing model" to target new customers.  The Company has described this model as "word-of-mouth marketing" in which it offers customers free trials, limited free versions, or affordable starter licenses "in order to promote additional usage, brand and product awareness, and adoption." On its website, Atlassian highlights each product is "always free for 10 users."  Once a customer exceeds 10 users, the customer can select from "Standard," "Premium," and "Enterprise" pricing plans, with the price of each increasing as users are added.

4.     In 2020, Atlassian began to transition its clients to the cloud, which has accounted for a rapidly growing portion of the Company's revenues.

5.     In the second and third quarters of 2022, as Atlassian's competitors lowered their revenue guidance in light of deteriorating market conditions, Defendants remained steadfast that these conditions were not having a material impact on the Company. For instance, on August 4, 2022, Defendant Co-Chief Executive Officer ("Co-CEO") Scott Farquhar ("Farquhar") reiterated

2

the Company's guidance of 50% year-on-year cloud growth for fiscal years 2023 and 2024. In a call with analysts that day, Defendant and Chief Revenue Officer ("CRO") Cameron Deatsch ("Deatsch") assured investors the Company was "being exceedingly vigilant watching all stages of our funnel" and that "we have yet to see any specific trend . . . that gives us pause or worry to date." According to Deatsch, the "demand for collaboration products continue[s] to be strong."

6.      Undisclosed to the public, between August 5, 2022 and November 3, 2022, Atlassian overstated its financial guidance by concealing trends of slowing conversions from free users to paying customers and slowing growth in paying-user expansion. As a result, the Company and Individual Defendants' (collectively, "Defendants") positive statements about the Company's business, operations, and prospects during this period were materially false and /or misleading.

7.      The truth began to emerge on November 3, 2022 when Atlassian issued a letter to shareholders and held a conference call with analysts to discuss its financial results for the fiscal first quarter of 2023 ended September 30, 2022. In the letter, Defendants revealed that "[b]ased on the macro headwinds," the Company was "lowering our Cloud revenue growth outlook to a range of approximately 40% to 45% year-over-year" for fiscal year 2023. In describing the "macro impacts" on the Company, the letter to shareholders revealed that (1) the Company "saw a decrease in the rate of Free instances converting to paid plans," calling it a "trend [that] became more pronounced" in the quarter and (2) the Company experienced "a slowing in the rate of paid user growth from existing customers."

8.      On this news, the price of Atlassian stock declined almost 29% the following trading day, from a closing price of $174.17 per share on November 3, 2022 to a closing price of $123.73 per share on November 4, 2022.

9.      As set forth herein, the Individual Defendants breached their fiduciary duties to the

Company by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements about Atlassian's business, operations, and prospects.

10.     Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (1) macroeconomic factors were having a material adverse impact on Atlassian's business; (2) the slowing conversions from free to paid customers the Company was experiencing constituted a negative trend; (3) paid user growth also had slowed; (4) the Company failed to maintain internal controls; and (4) as a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. As a result of the foregoing, Atlassian's public statements were materially false and misleading at all relevant times.

11.     The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct these false and misleading statements and omissions of material fact to the investing public.

12.     Additionally, in breach of their fiduciary duties, the Individual Defendants caused the Company to fail to maintain adequate internal controls.

13.     In light of the Individual Defendant's misconduct—which has subjected the Company, its Co-CEOs, Chief Operating Officer ("COO"), and CRO to being named as defendants in a federal securities fraud class action lawsuit pending in this District Court (the "Securities Class Action"), the need to undertake internal investigations, the need to implement adequate internal controls over its financial reporting, losses from the waste of corporate assets, and losses due to the unjust enrichment of the Individual Defendants who were improperly

overcompensated by the Company and/or who benefitted from the wrongdoing alleged herein—the Company will have to expend millions of dollars.

14.     Moreover, in light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and Defendants Michael Cannon-Brookes ("Cannon-Brookes") and Farquhar liability in the Securities Class Action, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of Atlassian's Board cannot consider a demand to commence litigation against themselves and the other Individual Defendants on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of sections 10(b) of the Exchange Act and Rule 10b-5 (17 C.F.R.§240.10b-5) promulgated thereunder by the SEC.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

17.     This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

18.     In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

19.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) because Nominal Defendant Atlassian is incorporated in this District and conducts business in this District.

## PARTIES

*Plaintiff*

20.     Plaintiff is, and has been at all relevant times, a shareholder of Atlassian.

*Nominal Defendant*

21.     Nominal Defendant Atlassian is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California.  Atlassian's common stock trades on the NYSE under the ticker symbol "TEAM."

*Individual Defendants*

22.     Cannon-Brookes is Atlassian's Co- CEO, and a Company Director.

23.     Farquhar is also Atlassian's co-founder, Co-CEO, and a Company Director.  From July 1, 2022 through September 5, 2022, Defendant Farquhar also served as Interim Chief Financial Officer of the Company.

24.     Shona Brown ("Brown") has served as a member of the Board since November 2015 and has served as Chair since April 2018.

25.     Heather M. Fernandez ("Fernandez") has served as a member of the Board since November 2015.

26.     Sasan Goodarzi ("Goodarzi") has served as a member of the Board since April 2018.

27.     Jay Parikh ("Parikh") has served as a member of the Board since July 2013.

28.     Enrique Salem ("Salem") has served as a member of the Board since July 2013.

29.     Steven Sordello ("Sordello") has served as a member of the Board since November

2015.

30.     Richard P. Wong ("Wong") has served as a member of the Board since July 2010.

31.     Michelle Zatlyn ("Zatlyn") has served as a member of the Board since September 2021.

32.     Anu Bharadwaj ("Bharadwaj") has served as Atlassian's COO at all relevant times.

33.     Cameron Deatsch ("Deatsch") has served as Atlassian's CRO at all relevant times.

34.     Defendants referenced in paragraphs 22 through 33 are herein referred to as the "Individual Defendants."

## <u>FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS</u>

35.     By reason of their positions as officers and/or directors of Atlassian, and because of their ability to control the business and corporate affairs of Atlassian, the Individual Defendants owed Atlassian and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Atlassian in a fair, just, honest, and equitable manner.   The Individual Defendants were and are required to act in furtherance of the best interests of Atlassian and its shareholders so as to benefit all shareholders equally.

36.     Each director and officer of the Company owes to Atlassian and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

37.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Atlassian, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

38.     To discharge their duties, the officers and directors of Atlassian were required to exercise reasonable and prudent supervision over the management, policies, controls, and

operations of the Company.

39.     Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of Atlassian, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

40.     As senior executive officer and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

41.     To discharge their duties, the officers and directors of Atlassian were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of Atlassian were

required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to Atlassian's own Code of Business Conduct & Ethics (the "Code of Conduct");

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    remain informed as to how Atlassian conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of Atlassian and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Atlassian's operations would comply with all applicable laws and Atlassian's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)    exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)    refrain from unduly benefiting themselves and other Company insiders at

the expense of the Company; and

(h)    examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

42.    Each of the Individual Defendants further owed to Atlassian and the shareholders the duty of loyalty requiring that each favor Atlassian's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

43.    At all times relevant hereto, the Individual Defendants were the agents of each other and of Atlassian and were at all times acting within the course and scope of such agency.

44.    Because of their advisory, executive, managerial, and directorial positions with Atlassian, each of the Individual Defendants had access to adverse, non-public information about the Company.

45.    The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Atlassian.

## ATLASSIAN'S CODE OF BUSINESS CONDUCT AND ETHICS

46.    Atlassian maintains a Code of Conduct that expressly applies to the Individual Defendants as directors and officers of the Company.

47.    In discussing the "Quality of Public Disclosures", the Code of Conduct states,

Atlassian is committed to providing its shareholders with information about its financial condition and results of operations as required by the securities laws of the United States. It is Atlassian's policy to provide full, fair, accurate, timely, and understandable disclosures in its public communications, including the reports and documents that it submits to the Securities and Exchange Commission and other authorities. Officers, employees, consultants, contractors, and others working on behalf of the company who are involved with these filings and disclosures,

including Atlassian's principal executive, financial, and accounting officers, must use reasonable judgment and perform their responsibilities honestly, ethically, and objectively in order to ensure that this disclosure policy is fulfilled and maintain familiarity with the disclosure requirements, processes and procedures that apply to Atlassian. You must not knowingly misrepresent, omit or cause others to misrepresent or omit, materials facts about Atlassian to others, including Atlassian's independent auditors, governmental regulators and self-regulator organizations. Members of Atlassian's Disclosure Committee are primarily responsible for monitoring the company's public disclosures.

48.    The "No Insider Trading" section of the Code of Conduct states,

If you learn of any material nonpublic information about Atlassian or a company with which Atlassian does business (for example, a customer, supplier, or other parties with which Atlassian is negotiating a major transaction, such as an acquisition, investment, or sale), you may not trade in Atlassian's securities or that other party's securities or "tip" others who might make an investment decision based on such information until the information becomes public or is no longer material. In simple terms, material nonpublic information is any type of information that could reasonably be expected to affect the market price of Atlassian's securities or a third party's securities, as the case may be, that has not been disseminated in a manner making it available to investors generally. Trading stock or encouraging others to trade stock on the basis of material nonpublic information, regardless of how small or large the trade, may constitute insider trading, insider dealing, or stock tipping and constitute a criminal offense in most countries where we do business and a violation of U.S. federal securities law. Like many public companies, Atlassian has adopted specific trading restrictions to guard against insider trading. Do not confuse these trading restrictions with the broader prohibition on trading when in possession of material nonpublic information. In other words, the company's "trading window" may be open but you may nonetheless be in possession of material nonpublic information that makes it inappropriate to trade. For more information, please read Policy – Insider Trading and Disclosure.

## ATLASSIAN'S AUDIT COMMITTEE CHARTER

49.    Atlassian maintains an Audit Committee Charter, which states the purpose of the committee is to, among other things, "oversee the accounting and financial reporting processes of the Company and the audits of the Company's financial statements."

50.    According to the Audit Committee Charter, the Audit Committee must review:

(i) any analyses prepared by management, the internal auditor and/or the independent auditors setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative generally accepted accounting

principles ("GAAP") methods on the financial statements. The Audit Committee may consider the ramifications of the use of such alternative disclosures and treatments on the financial statements, and the treatment preferred by the independent auditors. The Audit Committee may also consider other material written communications between the independent auditors and management, such as any management letter or schedule of unadjusted differences;

(ii) major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies;

(iii) major issues regarding accounting principles and procedures and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; and

(iv) the effects of regulatory and accounting initiatives, as well as off-balance sheet transactions and structures, on the financial statements of the Company.

51.     With respect to Earnings Press Releases, the Audit Committee Charter states,

The Audit Committee shall discuss the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies, including, in general, the types of information to be disclosed and the types of presentations to be made (paying particular attention to the use of "pro forma" or "adjusted" non-GAAP information).

52.     With respect to Risk Assessment and Management, the Audit Committee Charter states,

In connection with the Audit Committee's discussion of the Company's risk assessment and management guidelines, the Audit Committee may discuss or consider the Company's major risk exposures, including financial, operational, data privacy, cybersecurity, competition, legal, regulatory, tax and accounting risk exposures and the steps that the Company's management has taken to monitor and control such exposures.

53.     The Audit Committee Charter states that the committee

shall regularly report to and review with the Board any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the independent auditors, the performance of the internal audit function and any other matters that the Audit Committee deems appropriate or is requested to review for the benefit of the Board.

## SUBSTANTIVE ALLEGATIONS

54.     As detailed below, the Individual Defendants knew or were reckless as to whether

the public documents and statements issued or disseminated in the name of the Company from August 5, 2022 through November 3, 2022 were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

55.     On August 4, 2022, Atlassian filed a Current Report on Form 6-K with the SEC that included a quarterly letter to shareholders regarding the fourth quarter of fiscal year 2022 ("Q4'22 Shareholder Letter"), ended June 30, 2022.  The Q4'22 Shareholder Letter was signed by Defendants Cannon-Brookes and Farquhar.

56.     In the Q4'22 Shareholder Letter, co-CEOs Cannon-Brookes and Farquhar acknowledged "headlines reporting macroeconomic volatility."  Still, the Co-CEO Defendants instructed investors the Company was "uniquely positioned [with] deep-seated momentum and a differentiated business" because: (1) "developers tend to be the last roles companies scale back on"; (2) Atlassian's products are a "relatively small line item in overall IT budgets and likely not where customers look to reduce costs"; and (3) "customers tell us that Atlassian products are mission critical for them."  The Q4'22 Shareholder Letter then assured investors the Co-CEOs would "continue to scan the horizon for warning signs and be candid with investors as we have throughout our six+ years as a public company," followed by a reference to the Company's core "value" of "Open company, no bullshit."

57.     The Q4'22 Shareholder Letter reiterated "our expectations that Cloud revenue growth will be approximately 50% year-over-year for both FY23 and FY24."  In a Company press release, also filed with the above-referenced Form 6-K after the close of markets on August 4, 2022, the Company provided "financial targets" for the first quarter fiscal year 2023, including net

income per diluted share "expected to be approximately $0.37 to $0.38 per share.

58.     The Q4'22 Shareholder Letter further alluded to a "modest decrease in the conversion rates of Free instances upgrading to paid plans," but assured investors that "nothing we are seeing right now has changed our outlook."

59.     During the conference call with analysts accompanying the release of the fiscal fourth quarter 2022 financial results, an analyst inquired about the "macro impact that you are seeing in the business" and the Company's mention of slower conversion of free customers to paid customers.  In response, Defendant Deatsch stated, "across the many funnels we operate, whether that's our migrations, our editions upgrades, our cross-sell products, our overall retention continues to be exceedingly strong."  CRO Deatsch continued, "what you see is existing customers continue to have demand for what our products to help their teams work more productively" and that the Company would continue "to be vigilant.  We have multiple analytics teams, multiple growth teams, as well as our onboarding and R&D teams that are focused on ensuring that those customers remain active, and that gives us more chances to convert them to paid plans in the future."

60.     During the same call another analyst asked about the "demand side" and whether "there is one specific place that you're maybe keeping your eye on more than the others?" Defendant Deatsch responded, "we are being exceedingly vigilant across watching all stages of our funnel," and that "[t]he good news as of to date is we have yet to see any specific trend geographically or even in industry segments or in customer size that gives us pause to worry to date.  So something we continue to watch like a hawk, but there is no news to share today . . .  We continue to see demand for collaboration products continue to be strong."

61.     On September 14, 2022, Defendant Bharadwaj participated in the Goldman Sachs Communacopia Technology Conference.  During the question-and-answer session, an analyst

Kash asked Defendant Bharadwaj "what are you seeing out there with the demand environment?" In response COO Bharadwaj stated, "in the last shareholder letter, we talked about conversion of users from free to paid.  We are seeing a bit of softness over the past couple of months."  However, she reiterated Defendant Farquhar's point from the fiscal fourth quarter 2022 call that "over 90% of our revenue comes from existing customers."  COO Bharadwaj then assured investors "the number of free users that are coming in to create new free instances continues to grow steadily. We are not seeing any trends there.  So across the board, across existing and new, that's overall what we are seeing different parts of the business."

62.     During the same conference, COO Bharadwaj instructed investors that even beyond the conversion of "free to paid" customers, demand for Atlassian's products remained strong.  "So we think of upsell as really across free to standard, standard to premium, premium to enterprise. And we've seen some very encouraging progress there over the last four quarters, and I haven't really seen any discernible trend there in terms of the macroeconomic impact."  COO Bharadwaj then directed investors' attention to "user expansion, which is unique to the Atlassian model of organic growth."  COO Bharadwaj explained, "That's an area we continue to monitor" because "that's going to be an important one to look at in the current climate."

63.     The statements identified above were materially false and misleading, and failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*, that: (1) macroeconomic factors were having a material adverse impact on Atlassian's business; (2) the slowing conversions from free to paid customers the Company was experiencing constituted a negative trend; (3) paid user growth also had slowed; (4) the Company failed to maintain internal controls; and (4) as a result, Defendants' positive statements about the Company's financial

guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

64.    On November 3, 2022, after the markets closed, Atlassian filed a Current Report on Form 8-K with the SEC that included a shareholder letter for the first fiscal quarter of 2023 ("Q1'23 Shareholder Letter"), ended September 30, 2022.  The Q1'23 Shareholder Letter, which was signed by Defendants Cannon-Brookes and Farquhar, reminded investors of "our 'Open company, no bullshit' value" and started "with the topic that's top of mind for shareholders: macro impacts."  The Q1'23 Shareholder Letter revealed (1) that the "rate of Free instances converting to paid plans . . . trend became more pronounced in Q1" and (2) that "[t]his quarter, we started to see a slowing in the rate of our paid user growth from existing customers."  Notably, whereas three months prior, the Company guided 50% year-over-year growth for Cloud revenue, the Q1'23 Shareholder Letter further revealed a significant reduction to the Company's prior guidance, explaining the Company was "lowering our Cloud revenue growth outlook to a range of approximately 40% to 45% year-over-year for FY23."  In a press release attached as an exhibit to the above-referenced Form 8-K, the Company reported net income per diluted share of $0.36 for the fiscal first quarter of 2023.

65.    During the accompanying conference call that day, Defendant Farquhar acknowledged Atlassian was "not immune to the broader macroeconomic environment."  Defendant Deatsch then explained, "we continue to see th[e] trend today" of free users converting to paying customers "starting to slow down."  CRO Deatsch then revealed that "the new piece we saw in the previous quarter was towards the end of the quarter, we actually saw user expansion in existing accounts" where "we continue to see growth, just that user growth wasn't nearly as strong as what we've seen historically."

66.     Analysts expressed "surprise" at the disappointing results.  For example, Citibank issued a report on November 3, 2022, decrying the "negative revisions [and] significant and unexpected pivot in demand tone."  Similarly, Wolfe Research reported the same day that Atlassian "delivered unusually disappointing F1Q23 and lowered its expectations for the full year which took us and investors by surprise."  The Wolfe Research analyst opined that the "abrupt change in tone and outlook likely puts shares in the penalty box until more clarity on subscription revenue growth durability can be gained."

67.     On this news, shares of Atlassian dropped $50.34 per share, almost 29%, from a closing price of $174.17 per share on November 3, 2022, to a closing price of $123.73 per share on November 4, 2022.

68.     As Defendant Deatsch previously confirmed on August 4, 2022, the Company closely tracks its subscriber metrics and 90% of the Company's revenue in any given year comes from existing customers.  Defendant Farquhar explained the importance of tracking existing subscribers, stating, "that 90% number, we continue to see that, like, that's not likely to change in any particular time."

69.     The Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company from August 5, 2022 through November 3, 2022 were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

70.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Atlassian, their control over, receipt, and/or

modification of Atlassian's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Atlassian, participated in the fraudulent scheme alleged herein.

***Insider Sales***

71.    From October 3, 2022 to November 2, 2022, while in possession of material non-public, adverse Company information, and while Company stock was trading at artificially inflated rates due to the false and misleading statements described herein, Defendants Cannon-Brookes and Farquhar made 13 different sales of Company stock for proceeds exceeding $23 million. Notably, Cannon-Brookes October 3, 2022 sale and Farquhar's October 10, 2022 sale was the first time they sold Company stock.  The relevant trades are summarized below:

| | | | |
|---|---|---|---|
| 11/2/2022 | Scott Farquhar | 8,614 | $1,525,108.70 |
| 10/31/2022 | Michael Cannon-Brookes | 8,614 | $1,747,177.62 |
| 10/28/2022 | Michael Cannon-Brookes | 8,614 | $1,694,718.36 |
| 10/26/2022 | Scott Farquhar | 8,614 | $1,728,915.94 |
| 10/24/2022 | Michael Cannon-Brookes | 8,614 | $1,658,281.14 |
| 10/21/2022 | Michael Cannon-Brookes | 8,614 | $1,655,955.36 |
| 10/19/2022 | Michael Cannon-Brookes | 8,614 | $1,641,225.42 |
| 10/17/2022 | Scott Farquhar | 8,614 | $1,755,533.20 |
| 10/13/2022 | Scott Farquhar | 8,614 | $1,693,684.68 |

| 10/10/2022 | Michael Cannon-Brookes | 8,614 | $1,915,581.32 |
| 10/7/2022 | Michael Cannon-Brookes | 8,614 | $1,973,553.54 |
| 10/5/2022 | Michael Cannon-Brookes | 8,614 | $2,049,701.30 |
| 10/3/2022 | Michael Cannon-Brookes | 8,614 | $1,859,676.46 |

72.    Had Defendants Cannon-Brookes and Farquhar made these sales one month later, they would have received multiple millions of dollars less.

***Harm to the Company***

73.    As a direct and proximate result of the Individual Defendants' misconduct, Atlassian has lost and expended, and will lose and expend, millions of dollars.

74.    Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against the Company and four of the Individual Defendants, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

75.    Such expenditures also include, but are not limited to, the cost of implementing measures to remediate the material weaknesses in the Company's internal control over financial reporting.

76.    Such losses include, but are not limited to, significant compensation and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company, including bonuses tied to the Company's attainment of certain objectives, and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

77.    As a direct and proximate result of the Individual Defendants' conduct, Atlassian has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's

discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

78.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties by the Individual Defendants.

79.    Atlassian is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

80.    Plaintiff is a current shareholder of Atlassian and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

81.    A pre-suit demand on the Board of Atlassian is futile and, therefore, excused. During the illegal and wrongful course of conduct at the Company and to the present, the Board consisted of Defendants Cannon-Brookes, Farquhar, Brown, Fernandez, Goodarzi, Parickh, Salem, Sordello, Wong, Zatlyn.  These are the same ten directors that comprise the current Board.

82.    Given the factual allegations set forth herein, Plaintiff has not made a demand on the Board to bring this action against the Individual Defendants.  A pre-suit demand on the Board would be futile as there is reason to doubt that a majority of the members of the Board are capable of making an independent and/or disinterested decision to initiate and vigorously pursue this action. As set forth herein, Plaintiff has adequately alleged that there is reason to doubt that the nine current directors of Atlassian are capable of disinterestedly and independently considering a

demand to initiate and vigorously prosecute this action.

83.    The Individual Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

84.    Each of the Individual Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

85.    Each of the Individual Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

86.    Defendants Cannon-Brookes and Farquhar are named as defendants in the Securities Class Action and are also alleged herein to have acted on their insider knowledge of adverse, non-public Company information to reap windfalls from sales of Company stock while Atlassian stock was trading at artificially inflated rates.

87.    The Individual Defendants who serve as current members of the Board, were and are subject to the Company's Code of Conduct. The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the Individual Defendants to also adhere to Atlassian's standards of business conduct. The Individual Defendants violated the Code of Conduct because they knowingly or recklessly engaged in and participated in making and/or causing the Company to make the materially false and misleading statements

alleged herein.  Because the Individual Defendants violated the Code of Conduct, they face a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

88.     Defendants Fernandez, Salem, Sordello, and Zatlyn are not disinterested or independent, and therefore, are incapable of considering demand because they all serve as members of the Audit Committee (the "Audit Defendants") and, pursuant to the Audit Committee Charter, were specifically charged with the responsibility to assist the Board in fulfilling its oversight responsibilities related to, *inter alia*, accounting, regulatory, and public disclosure requirements.  At all relevant times, however, these Defendants breached their fiduciary duty to the Company by failing to prevent, correct, or inform the Board of, the issuance of material misstatements and omissions regarding the Company's business and the adequacy of the Company's internal controls as alleged above. Therefore, the Audit Defendants cannot independently consider any demand to sue themselves for breaching their fiduciary duties to the Company, as that would expose them to substantial liability and threaten their livelihoods.

89.     Furthermore, demand, in this case, is excused because the Individual Defendants who currently serve on the Board derive substantial revenue from the Company, control the Company, and are indebted to each other. The Individual Defendants have longstanding business and personal relationships with each other that preclude them from acting independently and in the best interests of the Company and the shareholders. These conflicts of interest precluded the Director Defendants from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct.  Thus, any demand for the Individual Defendants who currently sit on the Board would be futile.

90.     The Individual Defendants have taken no remedial action to redress the conduct

alleged herein. Additionally, each of the Individual Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

## <u>COUNT I</u>

### Against The Individual Defendants For Violations of § 10(b)
### of the Exchange Act and Rule 10b-5

91.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.    The Individual Defendants violated § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

93.    The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

94.    The Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Atlassian common stock.

95.    The Individual Defendants acted with scienter because they (a) knew that the public documents and statements issued or disseminated in the name of Atlassian were materially false and misleading; (b) knew that such statements or documents would be issued or disseminated to

the investing public; and (c) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.

96.    The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Atlassian, their control over, and/or receipt and/or modification of Atlassian's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Atlassian, participated in the fraudulent scheme alleged herein.

97.    As a result of the foregoing, the market price of Atlassian common stock was artificially inflated. In ignorance of the falsity of the statements, stockholders relied on the statements described above and/or the integrity of the market price of Atlassian common stock in purchasing Atlassian common stock at prices that were artificially inflated as a result of these false and misleading statements.

98.    As a result of the wrongful conduct alleged herein, the Company has suffered significant damages, including the costs and expenses incurred in defending itself in the Securities Class Action and reputational harm. In addition, as a consequence of their breach of fiduciary duties, the Individual Defendants have exposed the Company to millions of dollars in potential class-wide damages in the Securities Class Action.

## COUNT II

**Against The Individual Defendants
For Breach Of Fiduciary Duty (*Caremark*)**

99.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

100.    The Individual Defendants owed the Company fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation

of good faith, fair dealing, loyalty, and due care.

101.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

102.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to guide the truthful dissemination of Company news to the investing public and to the Company's shareholders, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

103.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

104.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs incurred in defending itself in the Securities Class Action, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Action, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

105.    Plaintiff on behalf of Atlassian has no adequate remedy at law.

## COUNT III

**Against Defendants Cannon-Brookes and Farquhar
For Breach Of Fiduciary Duty (*Brophy*)**

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    At all relevant times, the Defendants Cannon-Brookes and Farquhar held positions with the Company that provided them access to confidential, proprietary information concerning the Company's financial condition and future business prospects.  Notwithstanding their duty to refrain from trading in Atlassian's common stock under the circumstances, these Defendants sold their holdings in the Company at artificially inflated prices prior to the disclosure of the true state of the Company's finances and future prospects.

108.    The insider sales began during and continued throughout the Class Period in the Securities Class Action indicating they were not originally part of any regular pattern of sales for Defendants Cannon-Brookes and Farquhar**.**

109.    The information described above was proprietary, non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which Defendants Cannon-Brookes and Farquhar misappropriated to their own benefit when they sold Atlassian stock.  At the time of their stock sales, these Defendants were aware that the Company's business and prospects were declining, which when disclosed to the market would cause the inflated price of the Company's common stock to significantly decrease.  These Defendants' sales of stock while in possession and control of this material, adverse, non-public information was a breach of their fiduciary duties of loyalty and good faith.

110.    Plaintiff on behalf of Atlassian has no adequate remedy at law.

## COUNT IV

### Against The Individual Defendants For Unjust Enrichment

111.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

112.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Atlassian.

113.    The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from Atlassian that was tied to the performance or artificially inflated valuation of Atlassian, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

114.    Plaintiff, as a shareholder and a representative of Atlassian, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

115.    Plaintiff on behalf of Atlassian has no adequate remedy at law.

## COUNT V

### Against The Individual Defendants For Waste Of Corporate Assets

116.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue. It resulted in continuous, connected, and ongoing harm to the Company.

118.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, inter alia: (a) paying and colleting excessive compensation and bonuses; and (b) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Action.

119.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

120.     Plaintiff on behalf Atlassian has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.     Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.     Directing Atlassian to take all necessary actions to reform and improve its corporate governance and internal procedures to protect Atlassian and its stockholders from a repeat of the damaging events described herein;

C.     Awarding punitive damages;

D.     Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated: March 16, 2023                          **RIGRODSKY LAW, P.A.**

                                   By:   */s/ Seth D. Rigrodsky*
                                         _____
                                         Seth D. Rigrodsky (#3147)
Of Counsel:                              Gina M. Serra (#5387)
                                         Herbert W. Mondros (#3308)
Joshua Grabar                            300 Delaware Avenue, Suite 210
**GRABAR LAW OFFICE**                    Wilmington, DE 19801
1650 Market Street, Suite 3600           Telephone: (302) 295-5310
Philadelphia, PA 19103                   Facsimile: (302) 654-7530
Telephone: (267) 507-6085                Email: sdr@rl-legal.com
Facsimile: (267) 507-6048                Email: gms@rl-legal.com
Email: jgrabar@grabarlaw.com             Email: hwm@rl-legal.com

                                         *Attorneys for Plaintiff*